Maurice R. GRAVEL, a/k/a Mike Gravel, Appellant,

v.

ALASKAN VILLAGE, INC., a corporation, Glenn J. Pratt, Cecil H. Metcalfe, Robert Carlson, J. Kayler Gaylor, as individuals and as representatives of Alaskan Village, Inc., Appellees.

No. 650.

Supreme Court of Alaska.

Feb. 6, 1967.

See also Alaska, 409 P.2d 983.

Edgar Paul Boyko, Boyko & Tulin, Anchorage, for appellant.

W. C. Arnold, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

OPINION

DIMOND, Justice.

Appellant commenced this action on October 9, 1962, seeking damages for approximately $100,000 for an alleged breach

of contract. In its answer to appellant's amended complaint, appellee stated a counterclaim against appellant in excess of $35,000.

After two previous trial settings had been vacated, the case came on for trial on January 12, 1965. Appellee was represented by its counsel, Mr. Arnold. Appellant's counsel, Mr. Boyko, was unable to attend because of a conflicting trial schedule in California. Mr. Boyko's associate, Mr. Tulin, appeared in court on January 12. However, he had previously protested being required to proceed to trial on the grounds that the case was very complex, that he was not prepared to try the case, that it was never intended that he try it, and that Mr. Boyko was the only attorney prepared to try the case. Appellant also appeared in court on January 12 and stated that he had a difference of opinion with Mr. Tulin and wanted to discharge him as his counsel.

The case was never tried. In the proceedings in court on January 12 it was agreed by appellant and appellee's counsel, with the court's approval, that appellant would dismiss with prejudice his complaint against appellee, that appellee would dismiss with prejudice its counterclaim against appellant, and that a transcript of the proceedings would constitute a settlement of the case.

On June 18, 1965 appellant, through his counsel Mr. Boyko, filed a motion to vacate the agreement previously made by appellant to dismiss his complaint with prejudice. The motion asserted that the agreement and dismissal entered into by appellant on January 12 was done under coercion and duress, in that appellant had the choice of either dismissing his complaint or going to trial without counsel, against experienced and skilled counsel representing appellee, at a time when it was necessary for appellant to prepare for the forthcoming legislative session to which he had been elected as a member of the Alaska House of Representatives.[1]

■ Appellant's motion to vacate the agreement of dismissal was denied on July 28, 1965. Appellant filed a notice of appeal on August 10, 1965. Appellee moved to dismiss the appeal. We granted the motion to dismiss to the extent that it related to the consent judgment dismissing appellant's complaint and appellee's counterclaim with prejudice pursuant to the parties' agreement of January 12, 1965. We did this for the reason that the appeal was not timely and for the further reason that a consent judgment, under the generally accepted rule, is not subject to appellate review.[2] However, we found that the appeal was timely to the extent that it related to the order of July 28, 1965 denying appellant's motion to vacate the judgment of dismissal, and therefore as to that aspect of the case the motion to dismiss the appeal was denied.[3]

The question now presented is whether the trial judge acted arbitrarily and abused his discretion in denying appellant's motion to vacate the judgment of dismissal. Appellant claims that the judge did abuse his discretion on the ground that the record "clearly demonstrates the overwhelming coercion and duress that deprived the appellant of the exercise of his free will and induced him into the settlement that purported to end his case."[4]

■ Pertinent here is Civil Rule 60(b). It permits the trial court to relieve a party from a final judgment for various reasons, such as mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud, and for "any other reason justifying relief from the operation of the judgment."[5] Duress and coercion are not par-

---

1. The 1965 legislative session convened on January 25, 1965.

2. Gravel v. Alaskan Village, Inc., 409 P.2d 983 (Alaska 1966).

3. Id. at 986–987.

4. Appellant's reply brief, p. 5.

5. Civ.R. 60(b) provides in part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final

ticularly specified as reasons justifying the granting of relief from a judgment. But the "any other reason" clause of Civil Rule 60(b) (6) would cover duress and coercion because it vests power in the courts "adequate to enable them to vacate judgment whenever such action is appropriate to accomplish justice." [6]

The case was first set for trial on August 3, 1964. That setting was vacated and the case was reset for August 10, 1964. This setting was also vacated, and on or about December 28, 1964 the case was set to begin on January 12, 1965.

On January 6, 1965 appellant's counsel, Mr. Boyko, moved to vacate the January 12 trial setting on the ground, among others, that he would be engaged in the trial of cases in California between January 5 and March 12, 1965. He requested that

the case be rescheduled for trial not less than 30 days after the adjournment of the 1965 session of the Alaska Legislature.

On January 8, 1965 the court took up the motion for a continuance. The judge stated that Mr. Boyko had not advised the court or the calendar clerk prior to the setting of the case for trial that he had other cases pending. The motion for a continuance was denied unless by January 9, 1965 Mr. Tulin, one of appellant's counsel and Mr. Boyko's associate, advised the court that appellant had consented in writing to the trial of the case during the week of January 25 and had waived his right accorded to him as a member of the Alaska Legislature to postponement of the action until after the end of the 1965 legislative session.[7]

judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise or excusable neglect;
(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) any other reason justifying relief from the operation of the judgment.
6. Klapprott v. United States, 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266, 277 (1949), interpreting Rule 60(b) (6), Federal Rules of Civil Procedure, which is identical with Alaska Civil Rule 60(b) (6).
7. AS 24.40.030 provides:
The trial of a civil action, or proceeding in a court, or of any administrative proceeding before a state agency or officer, irrespective of the date of filing or when it became at issue, or the hearing of any motion or other proceeding shall be postponed when it appears to the court, agency, or officer before which the action or proceeding is pend-

ing that either a party, or an attorney of record (whether he became an attorney of record before or after the commencement of a legislative session or before or after his appointment to a legislative committee) or a principal witness is a member of the legislature of this state and that the legislature is in session or in recess (not exceeding a recess of 35 days) or that a legislative interim committee of which he is a member is meeting, or is to meet within a period which the court finds does not exceed the time reasonably necessary to enable the member to reach the committee meeting by the ordinary mode of travel. When the legislature is in session or in recess the action or proceeding shall not, without the consent of the attorney of record, be brought on for trial or hearing before the expiration of 30 days following final adjournment of the legislature or the commencement of a recess of more than 35 days. If a date is available during recess, continuance shall be given if possible to the earlier date. When a legislative committee is meeting, or is to meet within a period which the court finds does not exceed the time reasonably necessary to enable the member to reach the committee meeting by the ordinary mode of travel, the action or proceeding shall not, without the consent of the attorney of record, be brought on for trial or hearing before the expiration of the period necessary following the adjournment or recess of

On January 11 there was filed a motion for a five day continuance signed by appellant and supported by his affidavit which read as follows:

MAURICE R. GRAVEL being duly sworn, deposes and says:

1. That he is the plaintiff in the above named action.

2. That he first learned of the trial setting of this cause for the week of January 11, 1964 [sic] on the 4th day of January, 1965, at about the hour of 10:00 o'clock P.M.

3. That at this time your affiant telephoned his attorney, EDGAR PAUL BOYKO in Los Angeles, California, to discuss the setting of this case for trial; that at this time your affiant learned that the said EDGAR PAUL BOYKO was engaged in the trial of a criminal case in Santa Barbara, California, and that he would absolutely not be able to appear in the trial of this case the week of January 11, 1965.

4. That these facts and circumstances were made known to this Court by correspondence, affidavits, and a telegram from the Presiding Judge at Santa Barbara, California.

5. That under the circumstances, your affiant is left without counsel, other than CHARLES E. TULIN, who has repeatedly substituted for Mr. Boyko in the service and filing of papers.

6. That under the circumstances and in light of the complex nature of this case, your affiant is unable to prepare for trial in less than five (5) days of complex preparation. That the files and documents are numerous, and in addition subpoenas must issue.

7. That in light of the foregoing, your affiant respectfully requests that the Court continue this action for a time sufficient to enable your affiant to adequately prepare for trial with substituted counsel.

The motion was noticed for hearing on January 12, 1965.

On January 12, the day set for trial of the action, there were present in court appellant and his counsel Mr. Tulin, and Mr. Arnold, counsel for appellee. Appellant stated to the court that he had had a difference of opinion with his counsel, Mr. Tulin, and wished to discharge him; that he requested a five day continuance in an effort to seek to obtain other counsel to represent him; that he would not waive his legislative immunity; that he had considered settling the case but that because of his lack of knowledge of the law he would prefer to try it if given a sufficient length of time; that he was willing to settle as a "last ditch" matter; that the settlement he would make would be to dismiss the case; but that he had decided not to settle because Mr. Arnold, appellees' counsel, had submitted a settlement document full of reservations. The proceedings that then took place are shown in an appendix to this opinion.

The record does not reveal a case of duress or coercion which would necessitate our reversing the lower court's determination not to set aside the judgment of dismissal of the action which had been agreed to by appellant. Appellant is not an unread, illiterate person who did not understand the nature of the case, the nature of the settlement agreement made, or the circumstances regarding the judge's insistence that the trial of the action not be delayed any further. Appellant is an intelligent and so-

---

the committee meeting as the court finds is reasonably necessary to enable the member to reach the place of trial or hearing by the ordinary mode of travel from the place of the committee meeting, unless at the expiration of that period the legislature is to be in session; and in that case the action or proceed-

ing shall not, without his consent, be brought on for trial or hearing before the expiration of 30 days next following final adjournment or the commencement of a recess of more than 35 days. If a date is available during the recess, continuance shall be given to the earlier date.

phisticated person who not only was elected to the state House of Representatives, but was chosen to be Speaker of the House for the fourth state legislature in 1965 and 1966.

Appellant was not totally without the assistance of counsel at material times in these proceedings. Mr. Tulin, Mr. Boyko's associate, appeared as appellant's counsel as early as September 12, 1963, on at least three occasions in 1964, and on January 8, 11 and 12, 1965. The settlement agreed upon was not entered into without the assistance of counsel. On January 11 the record indicates that Mr. Tulin had been negotiating for settlement of the dispute. On January 12, when the settlement was made, Mr. Tulin indicated his approval or "support" of his client's wishes regarding the settlement.

At one point in the January 12 proceedings appellant did indicate that he was agreeing to a dismissal with prejudice because, as he said: "I'm doing this under duress—as I understand it. I'm caught in a box. * * *" But inconsistent with that statement is the fact that the motion to vacate the settlement agreement was not supported by appellant's affidavit or any other affidavit or evidence tending to establish coercion or duress.

 The granting of relief from a judgment is addressed to the sound discretion of the trial court. That court's ruling will not be disturbed except upon a showing of an abuse of discretion,[8] which would be the case only if we were left with the definite and firm conviction on the whole record that the judge had made a mistake in concluding that there was no reason justifying relief from the operation of the judgment of dismissal of appellant's complaint and appellees' counterclaim.[9] We have no such conviction. We do not believe, in the light of the record, that the

accomplishment of justice demands or even makes appropriate the vacating of the judgment below. The record simply does not support appellant's contention that he was deprived of his free will and induced to settle the case under coercion and duress.

In view of the decision we have reached, it is unnecessary for us to decide another point made by appellant, that it was error for the court below to deny appellant's demand for a trial by jury.

We feel constrained to comment upon a statement made by appellant's counsel, Mr. Boyko, at page 10 of his reply brief where he accuses appellee's counsel of currying the favor of this court. Such a charge made against appellees' counsel is unsupported by the record. A statement of this type is uncalled for and has no place in any brief submitted to this court.

The judgment is affirmed.

## APPENDIX

MR. ARNOLD: This looks to me like a filibuster, but if Mr. Gravel is so suspicious of Mr. Tulin and myself that he won't sign any document that we draw or agree upon, I suggest that Mr. Gravel state to Your Honor in open Court on the record the terms under which he's willing to settle this case. And if they're satisfactory, I'll agree to them on the record.

THE COURT: What's your position, Mr. Gravel, on that? You're not bound to do that now.

MR. GRAVEL: As I understand it, the agreement that we had Sunday night, and it was changing it from—I'll state my position as of now, Your Honor. I am prepared to dismiss this case right now, walk out of here and the case is dismissed if they'll dismiss the action against me. In addition to that, I am prepared to not appeal the ruling on the quashing of service, I believe is the terminology, of Mr. H. D. Fowler.

---

8. Palzer v. Serv-U-Meat Co., 419 P.2d 201, 207 (Alaska 1966); Alaska Truck Transport, Inc. v. Inter-Alaska Credit Serv., Inc., 397 P.2d 618, 619–620 (Alaska 1964); Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962).

9. See Sanuita v. Hedberg, 404 P.2d 647, 650 (Alaska 1965).

THE COURT: Mr. Arnold?

MR. ARNOLD: Now, we're agreeable to settling the case on that plus the additional feature previously agreed to that Mr. Gravel would assume liability for the Palzer claim.

MR. GRAVEL: In answer to that, Your Honor—

THE COURT: That's not before the Court, but I'll hear you on the matter. Is it—

MR. GRAVEL: No, it's not in—

THE COURT: All right, go ahead. I mean, go ahead and give your position on it—in the Palzer matter was what I meant. The Court knows nothing about it, but you go ahead and give your position.

MR. GRAVEL: Sunday evening in order to dispense with it and I had a desire to and I think it's understandable why I would like to get this off my back, this was stipulated. It came back in written form, not completely to my comprehension. Another point was stipulated, came back, and then I came back and there was an additional stipulation. I can just say to the distinguished Mr. Arnold that I stated my position. He did not wish to regress to a former position before; I did not regress. My position is stated, as it appears in the record. This is what I will—agree to stipulate.

\* \* \* \* \* \*

MR. ARNOLD: If the Court please, in consultation with my clients, they have authorized me to state that they will waive the matter of the Palzer claim and settle this lawsuit on the basis that the action be dismissed with prejudice both as to the complaint and the counterclaims, including the right of appeal from the motion quashing the service on Fowler and dismissing the action as to him.

THE COURT: Mr. Gravel, you've heard that. Is that in accordance with your statement? You may consult, yes. (Pause) You may ask any question of Mr. Arnold if you have any of them, or—

MR. GRAVEL: Your Honor, I was seeking a definition of a word.

THE COURT: Yes.

MR. GRAVEL: Your Honor, I—Mr. Arnold has stated his understanding of it. I before stated here for the record, if the record was going, what I thought my agreement is. Would Your Honor entertain that as sufficient of my intent?

THE COURT: Well, I think you are in agreement, Mr. Gravel, but I want to be sure that you know that you're in agreement. And may I state it as I understand it and see if you understand it. My understanding is that you stated that you were willing to dismiss this present action against all of the defendants; now I don't believe you used the words, "With prejudice,", but the words, "With prejudice," mean that they will dismiss their counterclaim against you with prejudice. The words, "With prejudice," mean that neither one of you can maintain this action at any future date. I understand that you indicated that insofar as the rulings on any of the motions in this case, including the one on Fowler, that you did not and would waive the right to appeal. Now, is that correct?

MR. GRAVEL: Would you repeat that last statement, Your Honor?

THE COURT: That in regard to any of the motions in the case including—and that's the only one that apparently there's any controversy about at all, is the reason I say, including—specifically to call it to your attention—that you would waive the right to appeal to Judge Fitzgerald's ruling on the matter of quashing the service on Mr. Fowler.

MR. GRAVEL: Yes, Your Honor. This would be the only one that I would waive the right to appeal on, as I would—as I—

THE COURT: That's the only one that you had in mind, was it not?

MR. GRAVEL: That's correct. Your Honor, I would have no way—

MR. ARNOLD: The only one I have in mind and as far as I can see, it's the only one that exists.

THE COURT: Well, I think that's true, Mr. Gravel. I think the—I think you should

consult with Mr. Tulin on this matter for this is a matter of procedure and not on the merits of the case. If it were dismissed with prejudice on the matter, by agreement of the parties—I don't think either party would have a right to appeal since it would be a settlement in the matter. Isn't that right?

MR. TULIN: That is correct.

THE COURT: Isn't that right, Mr. Tulin, insofar as you—

MR. TULIN: As far as this proceeding is concerned, I believe, to the Supreme Court, I believe that's correct.

THE COURT: Because it would be in the nature of a settlement agreement with prejudice, so that you would not have any right of appeal on any of the motions or on the merits at all. So I think you should have that in mind. That's what it amounts to. In other words, this would be finished for all—for all times, for all purposes.

MR. GRAVEL: Could I restate—

THE COURT: Yes.

MR. GRAVEL: (Continuing)—the intent that I was trying to get across, Your Honor.

THE COURT: Yes.

MR. GRAVEL: And I certainly am grateful for the opportunity of your trying to interpret what I'm trying to state that I'm willing to dismiss this action, only this action and that I am also willing to agree that there will be no appeal, only on the quashing of the Fowler service. In other words, I will not make an appeal on this quashing. This is all I—

THE COURT: All right. Then the question is, the question is—and the Court cannot advise you whether there might be some rights of appeal, but Mr. Arnold, as I understand, takes the position that by dismissing this with prejudice now—I think maybe that's what we're—the position—that's the word we're dealing with now, with prejudice—which would preclude any further action in this matter. Now you didn't say that, as I understand, in your statement.

MR. GRAVEL: Begging the indulgence of the Court again, Your Honor.

THE COURT: Sure.

MR. GRAVEL: The—as I understand it, the word, "Prejudice" means that you dismiss everything forever and ever.

THE COURT: That's right. No right to appeal.

MR. GRAVEL: And I haven't used the word, "Prejudice"—

THE COURT: That's right.

MR. GRAVEL: (Continuing)—Your Honor. (Pause) The—we get back to a difficulty here again on tactics, and it—I —he's just explained to me what is involved in prejudice. It doesn't involve what I intended it to involve. Apparently, the legal definition, of course, holds rather than what I intended.

THE COURT: What did you intend it to involve?

MR. GRAVEL: Well, he was just telling me that without the word, "Prejudice", then the thing could be refiled again— denote or—from the beginning this, of course, is not my intention, Your Honor.

THE COURT: Well, now, as I—did he —did Mr. Tulin advise you that you could not, if it was with prejudice, that if it was without prejudice that if the Statute of Limitations had not run, then you could refile. Of course, you could refile even with the statute running but it might be subject to dismissal with the statute running. With prejudice as I—as the Court understands it in this case, would mean if it was dismissed with prejudice then you could not maintain the action. It could be dismissed because you had already settled it and said that you never intended to bring it back again.

MR. GRAVEL: Well, you see, such is not the case, Your Honor. In other words, I'm doing this under duress—as I understand it. I'm caught in a box, and I—

THE COURT: Well, I don't think you should do it under duress. That's—the Court has no intention of requiring it under duress. Now, of course, if you consider

the fact the Court's ruled and you have to go to trial under duress, that may be your interpretation, but that was not the Court's view.

MR. GRAVEL: Your Honor, no.

MR. TULIN: Could we have a recess for about four or five minutes. Perhaps we could go over this—

THE COURT: All right. Court will stand in recess subject to call.

THE CLERK: This Court now stands in recess subject to call.

(Whereupon at 11:49 a. m., Court recessed, and at 11:52 a. m. resumed its session, and the following proceedings were had:)

THE CLERK: This Court now resumes its session.

THE COURT: Mr. Gravel?

MR. GRAVEL: Your Honor, I again apologize. I will insert the words, "With prejudice."

THE COURT: You would or would not?

MR. GRAVEL: I will. I insert in my statement, "Agreed to dismissal with prejudice."

THE COURT: All right. Now, Mr. Arnold?

MR. ARNOLD: I suggest that Your Honor state the terms of the settlement and then that we all indicate whether or not we are in agreement.

THE COURT: I'll state it as I understand it. If there's any—

MR. TULIN: Could I clarify one point—

THE COURT: Yes.

MR. TULIN: (Continuing)—for the record, Your Honor? That I—that Mr. Gravel is apparently handling his case at this juncture. And I would like to—if he doesn't wish my assistance in the action— am I a part of the case or am I not? I'd like him to state his settlement and—

THE COURT: Well, the problem the Court has is that I haven't granted the motion to relieve you yet here.

MR. TULIN: I'd like the record to clearly show then that Mr. Gravel is handling the negotiations at this point and that he is stating his position.

THE COURT: Well, maybe we'd better—maybe we should clarify—well, let's don't get into that right now. We'll see what this is here and then the Court will rule on the other matter later. As I understand, Mr. Gravel, you are willing to dismiss your complaint against all the defendants in this case. You are the plaintiff in the case. Mr. Arnold represents all the defendants—with prejudice. With prejudice meaning that you nor they can either bring up any of the issues in this case in any future proceeding. They, in turn, will dismiss their counterclaim against you with prejudice which, by the same token, means that they nor you can maintain an action pertaining to the same issues in this case; that, in addition, you will waive any right to appeal from only one ruling in this case. Of course, that would not be the case if it's with prejudice if everybody understands what it is. In other words, there would be no right of appeal in these cases. Wouldn't that be your interpretation?

MR. ARNOLD: I think that Mr. Gravel has the right of appeal—

THE COURT: All right.

MR. ARNOLD: (Continuing)—on the Fowler ruling even if he dismissed as to the other defendants.

THE COURT: All right, then, with that understanding then. But it's with prejudice and whatever, "With prejudice" might mean legally, that both parties are willing to insert that and allow the Court to rule on it if they think the—is that right?

MR. ARNOLD: That's right, plus the fact that Mr.—

THE COURT: So Mr. Gravel is only then agreeing not to appeal the Fowler portion of the cases.

MR. GRAVEL: The quashing, yes.

THE COURT: The quashing of the—

MR. GRAVEL: The service.

THE COURT: Do you understand?

MR. ARNOLD: Yes, and we're agreeable [sic] to the settlement—on accepting the State's—the Court's statement on the record as to the terms—itself.

THE COURT: Mr. Gravel, do you have any questions on that or are you willing to—

MR. GRAVEL: No, Your Honor.

THE COURT: Are you willing to accept it on the basis of what the Court stated was its understanding?

MR. GRAVEL: Yes, Your Honor.

THE COURT: (Continuing)—Of the party's agreement? All right, then, it may be considered as a stipulation of the parties and dismissal of the complaint and counterclaims with prejudice.

MR. ARNOLD: Well, I haven't, Your Honor, any desire to bring any other matters into this thing and I haven't any desire to embarrass Mr. Tulin, but insofar as Mr. Tulin is still counsel of record in this matter I think that he ought to indicate his approval or disapproval of this matter.

MR. TULIN: Well, I think I'm bound, Your Honor, by the statements of my client here and certainly I can do no other than to support his wishes, and he's made them clear on the record, and I will support him.

THE COURT: Mr. Arnold, does that satisfy you?

MR. ARNOLD: That is satisfactory, if the Court please.

THE COURT: All right, then, Mr. Arnold, you may prepare the necessary order of dismissal in the matter. I assume that costs and attorney's fees since it's not in here, will be the expense of both parties. No mention was made of it.

MR. ARNOLD: Well, that would be my understanding, of course; that would follow from the settlement that it's—that it's without cost to either parties, and I would suggest in the light of the—

THE COURT: Let me see what Mr. Gravel—

MR. ARNOLD: Yes.

THE COURT: (Continuing)—was that your understanding?

MR. GRAVEL: This is what I understand, Your Honor.

THE COURT: All right, Mr. Arnold.

MR. ARNOLD: Well, I would suggest that in view of the difficulties we've had here about orders that we agree that the record stands as the settlement without—without a formal order, unless the Court—

THE COURT: That a transcript of the last statement of the Court be made and the order filed and the final agree- —that that will stand as a dismissal?

MR. GRAVEL: Your Honor, would it be possible that the entire transcript of today's proceedings winding up with the last statements of Your Honor be the settlement in question?

THE COURT: Well,—

MR. TULIN: I agree.

THE COURT: What was that?

MR. GRAVEL: I agree, Your Honor.

THE COURT: To the—just the last statement of the Court relative to what the understanding of the parties was and the parties consent to it? Of course, the parties can always order a transcript of—

MR. GRAVEL: I think it wouldn't be unreasonable, Your Honor,—

THE COURT: It's always—

MR. GRAVEL: (Continuing)—if it's all right with Mr. Arnold, that the entire document be considered a settlement, and the showing of the final agreement at the end, I think, will be adequate.

MR. ARNOLD: Well, I haven't any objection to that. I'm wondering who is going to pay for it.

MR. GRAVEL: May I inquire what we're talking about—it costs. I've incurred a great deal of costs this weekend.

THE COURT: Well, I'll tell you, the Court will order it filed at the Court's expense.

MR. ARNOLD: Thank you, Your Honor.

MR. GRAVEL: Thank you, Your Honor, for your indulgence.

THE COURT: Well, I want to state to both counsel here that this certainly is, from the standpoint of forcing it to trial, has been no pleasure on the Court's part. I realize that—there's no criticism of Mr. Boyko as such, in the matter because I have great regard for Mr. Boyko's ability, but I think that the problem is—and I think maybe it's been solved as a result of this, that in the future he is going to keep the Court advised of his commitments in other areas, so that the Court can calendar these cases. As I indicated to Mr. Gravel, the Court did not originally set this case for your convenience to get it tried at an early date. It turned out that through counsel— and I'm sure that in all good faith he had other commitments, but by the same token, as the Court indicated, Mr. Arnold's clients had commitments, too, and they had certain rights. I certainly hope and I gather from this settlement as I indicated to Mr. Gravel, I didn't think he should settle this under compulsion. I think maybe that nobody has been hurt as a result of this. Probably it's settled matters and—because in any lawsuit, somebody has to lose. And if you go to trial on this nobody knows who is going to win—on any of these counterclaims. Now, as far as to what the merits are, the Court knows nothing about any of the testimony on each side—as to who would prevail is something entirely different. But if I— the Court has caused any inconvenience to anyone, I apologize, but merely state that I was doing what I thought that the Court should do but if the Court was wrong—the Court was wrong, that I felt that I was doing my duty to the public as such, and I think that's the best that anyone can do under the circumstances. Is there anything else?

MR. ARNOLD: I'd like to express my appreciation and the appreciation of my clients for the patience that the Court has demonstrated here in this matter.

MR. GRAVEL: Your Honor, I'd like to express my appreciations for your patience of my—

THE COURT: Well, I—as I say, I hope that justice has been done in this case and that's all that any of us can hope in the matter. If there's nothing else, the Court will stand in recess subject to call.